UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GERALD PETERS GALLERY, INC., A New Mexico corporation, and GERALD PETERS,<br><br>Plaintiffs,<br>v.<br><br>PETER STREMMEL, STREMMEL GALLERIES, LTD., a Nevada corporation, MIKE OVERBY, and COEUR D'ALENE ART AUCTION OF NEVADA, L.L.C., a Nevada corporation,<br><br>Defendants. | Case No. 3:17-cv-00273-MMD-VPC<br><br>ORDER |

**I.    SUMMARY**

This is a defamation action involving an oil painting titled *The Sun and the Rain*. Before the Court are two motions: (1) Defendants Peter Stremmel, Stremmel Galleries, Ltd. ("Stremmel Galleries"), Mike Overby, and Coeur d'Alene Art Auction of Nevada, LLC's ("Coeur d'Alene Art Auction") (collectively, "Defendants") motion to dismiss (ECF No. 42) and (2) Defendants' motion for summary judgment (ECF No. 52). The Court has reviewed Plaintiffs Gerald Peters Gallery, Inc. ("Gerald Peters Gallery") and Gerald Peters's (collectively, "Plaintiffs") responses (ECF Nos. 46, 55) as well as Defendants' replies (ECF Nos. 49, 56). For the following reasons, the Court grants Defendants' motion for summary judgment and denies Defendants' motion to dismiss as moot.

///

///

## II. RELEVANT BACKGROUND[1]

*The Sun and the Rain* is an oil painting a little over thirty-six inches in height and forty-four inches in width and depicts an outfitter or cowboy in dark clothes and a wide-brimmed hat riding a gray horse through mountainous terrain. (ECF No. 52-3 at 3; ECF No. 52-4 at 2.) By the man's side is a bay pack horse with a white blaze and a white sock visible on its rear right leg—the left rear leg is hidden behind an overturned log over which the horse is stepping. (ECF No. 52-3 at 3.) The sky is mottled with gray, blue, and white clouds suggestive of a day that is both sunny and rainy. (*Id.*) The painting is signed and dated on the lower left: F. Tenney Johnson N.A./1937.[2] (ECF No. 52-4 at 2; *see generally* ECF No. 52-13.[3])

Plaintiff Gerald Peters Gallery purchased *The Sun and the Rain* from the Kodner Gallery in St. Louis, Missouri, for $265,000 on September 12, 2012. (ECF No. 52 at 2; ECF No. 52-2 at 8.) The Gerald Peters Gallery then offered to sell *The Sun and the Rain* to R.D. Hubbard—the principal of a museum in New Mexico called the Hubbard Museum—for $900,000. (ECF No. 52 at 2 (citing ECF No. 52-3 at 2).) Mr. Hubbard purchased *The Sun and the Rain* on behalf of the Hubbard Museum for $750,000. (ECF No. 52-4 at 2-4.) In the art trade agreement governing the purchase, the Gerald Peters Gallery warranted that *The Sun and the Rain* "is an authentic artwork by Frank Tenney Johnson." (ECF No. 52 at 3 (quoting ECF No. 52-4 at 3).) The Gerald Peters Gallery and Mr. Hubbard agreed that Mr. Hubbard could return *The Sun and the Rain* to the gallery for a refund if the warranty failed. (*Id.* (citing ECF No. 52-4 at 4).) Mr. Hubbard hung *The Sun and the Rain* in his personal home at the Bighorn Golf Club in Palm Desert, California. (*Id.*)

///

---

[1] The following facts are undisputed unless otherwise noted.

[2] "N.A." signifies Frank Tenney Johnson's membership in the National Academy of Design. (ECF No. 52-13 at 14.)

[3] The exhibits to Defendants' motion for summary judgment are authenticated by the declaration of Austin K. Sweet, Esq. (ECF No. 52-1 at 2.)

2

Mr. Hubbard is the principal of the Bighorn Golf Club, whose clubhouse he decided to replace in 2015. (*Id.*) The clubhouse was decorated with a number of artworks that the Bighorn Golf Club decided to sell through the Coeur d'Alene Art Auction. (*Id.*) Mr. Hubbard's executive assistant, Tamara Groat, contacted Defendant Peter Stremmel about selling the clubhouse art and began coordinating the sale of several pieces that Mr. Stremmel perceived to be appropriate for the auction.[4] (*Id.*)

While Mr. Hubbard and his associates were working with Mr. Stremmel to sell the clubhouse art, an art dealer named David DeFrancisca visited Mr. Hubbard's home and happened to see *The Sun and the Rain*. (*Id.*) Mr. DeFrancisca suggested that Mr. Hubbard have the painting evaluated because Mr. DeFrancisca was "not sure that's a Frank Tenney Johnson painting."[5] (*Id.*) Based on DeFrancisca's assessment, Mr. Hubbard decided to "see about putting it in the art auction," choosing the Coeur d'Alene Art Auction because "that's the only place that I think has a decent market for higher-end Western art." (*Id.*)

Thereafter, Ms. Groat told Mr. Stremmel "there is a Frank T. Johnson that [Mr. Hubbard] owns, that he would like your opinion on" in email correspondence dated November 12, 2015, that otherwise related to the clubhouse art. (*Id.*; *see also* ECF No. 52-7 at 4.) Mr. Stremmel expressed interest and asked Ms. Groat to have someone "just shoot it with their iPhone and send the image to" him. Ms. Groat responded with a photo of *The Sun and the Rain*. (ECF No. 52 at 3; ECF No. 52-7 at 3.)

The next day, Mr. Stremmel responded to Ms. Groat in relevant part:

> Mike Overby [principal of the Coeur d'Alene Art Auction] and I have blown up this painting and examined it carefully, and have concluded that it is not in fact by Frank Tenney Johnson. We have sold over fifty of his paintings over the years, and hold every sales record for his works at auction, and are

---

[4]Plaintiffs object to Defendants' assertion that "Tamara Groat contacted Peter Stremmel regarding selling this art" based on their reading of the words "this art" as including *The Sun and the Rain*. (*See* ECF No. 55 at 5.) However, the context of Defendants' assertion makes clear that the words "this art" refer solely to the clubhouse art, not to *The Sun and the Rain*. (*See* ECF No. 52 at 3.)

[5]Plaintiffs argue that the Court cannot consider Mr. DeFrancisca's statement because it is hearsay. (ECF No. 55 at 5.) Mr. DeFrancisca's statement is not hearsay because it is offered for its effect on the listener (Mr. Hubbard), not for the truth of the matter asserted therein (the inauthenticity of *The Sun and the Rain*).

3

absolutely certain about this determination. I am sorry to give [Mr. Hubbard] this news, but at least now he knows.

(ECF No. 38 at 2-3.) The remainder of the email related to the sale of the clubhouse art. (ECF No. 52 at 4.) Neither Mr. Stremmel nor Mr. Overby knew that the Gerald Peters Gallery had sold *The Sun and the Rain* to Mr. Hubbard. (ECF No. 55 at 5; ECF No. 56 at 9.)

Ms. Groat emailed Mr. Stremmel again on November 16, 2015, with a higher quality image. (ECF No. 38 at 3-4; ECF No. 52 at 4.) Mr. Stremmel responded the next day:

> I sent the image to Mike Overby, and we both agreed—we wouldn't touch it for our auction [referring to the Coeur d'Alene Art Auction]. Nothing about it says Frank Tenney Johnson, even the signature looks labored. In fact, minus the signature, if you asked us to identify the artist we honestly wouldn't have a clue. I hope it wasn't represented to Dee as an FTJ—and I really hope he didn't pay a lot for it. Let us know if we can help.

(ECF No. 38 at 4; ECF No. 52 at 4.)

Ms. Groat asked Mr. Stremmel to speak with Ed Burger—the president of R.D. Hubbard Enterprises, Inc.—about *The Sun and the Rain*. (ECF No. 52 at 4.) Mr. Stremmel agreed and spoke to Mr. Burger by phone. (*See id.* at 4-5.) During their phone call, Mr. Stremmel inquired about the circumstances surrounding *The Sun and the Rain*, and Mr. Burger informed Mr. Stremmel that Mr. Hubbard had purchased the painting from the Gerald Peters Gallery. (*Id.* at 5.) The men did not discuss the authenticity of *The Sun and the Rain*, and this was the first time that Mr. Stremmel was informed *The Sun and the Rain* involved Plaintiffs. (*Id.*) Mr. Stremmel followed up the phone call with an email dated November 21, 2015:

> Since I have not seen this painting firsthand, I would like to modify my recent comments to Tami somewhat. Our position is that this painting would not be acceptable for the Coeur d'Alene Art Auction. Let's leave it at that.

(ECF No. 38 at 5; ECF No. 52 at 5.)

After receiving this email, Mr. Hubbard directed Mr. Burger to contact their attorney. (ECF No. 52 at 5.) Mr. Hubbard's attorney wrote a letter to the Gerald Peters Gallery dated December 3, 2015, explaining that the Hubbard Museum "has recently received

4

information from two credible appraisers that [*The Sun and the Rain*] is *not* an authentic artwork by Frank Tenney Johnson" and requesting a refund of the purchase price.[6] (ECF No. 52-10 at 2.) Eventually, the Gerald Peters Gallery and the Hubbard Museum reached the following agreement: the Gerald Peters Gallery would trade a painting titled *Navajos* by Edgar Alwin Payne for *The Sun and the Rain*. (ECF No. 52 at 6.) At the time, the Gerald Peters Gallery considered *The Sun and the Rain* to be worth $150,000 more than *Navajos*. (*Id.*; *see also* ECF No. 52-2 at 21.)

Gerald Peters and the Gerald Peters Gallery then filed this lawsuit, pleading three claims against Defendants in their First Amended Complaint ("FAC"): (1) defamation; (2) business disparagement; and (3) deceptive trade practices. (ECF No. 38.) Defendants have filed a motion to dismiss all of Plaintiffs' claims in addition to a motion for summary judgment on all of Plaintiffs' claims. (ECF Nos. 42, 52.)

### III.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a dispute is material if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is not appropriate when "reasonable minds could differ as to the import of the evidence." *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is [that which is] enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). Decisions granting or denying summary judgment are made in light

---

[6]The parties do not agree regarding the identities of the "two credible appraisers" Mr. Hubbard's attorney referenced, but this dispute is immaterial. (ECF No. 55 at 6.)

5

of the purpose of summary judgment: "to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008). If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**IV.    DISCUSSION**

Defendants move for summary judgment on all three claims in Plaintiffs' first amended complaint ("FAC"): defamation, business disparagement, and deceptive trade practices. (*See* ECF Nos. 38, 52.) The Court will grant summary judgment in favor of Defendants on all three claims.

///

///

## A. Defamation (Count One)

"An action for defamation requires the plaintiff to prove four elements: '(1) a false and defamatory statement; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.'" *Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009) (quoting *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005)). Defendants argue that Plaintiffs cannot prove the first, second, and fourth elements. (ECF No. 52 at 7.) The Court will consider only the first element as it is dispositive.

Plaintiffs' FAC identifies three allegedly defamatory statements made by Stremmel:

Statement #1: "Mike Overby and I have blown up this painting and examined it carefully, and have concluded that it is not in fact by Frank Tenney Johnson. We have sold over fifty of his paintings over the years, and hold every sales record for his works at auction, and are absolutely certain about this determination. I am sorry to give Dee [referring to Mr. Hubbard] this news, but at least now he knows."

Statement #2: "I sent the image to Mike Overby, and we both agreed—we wouldn't touch it for our auction [referring to the Coeur d'Alene Auction]. Nothing about it says Frank Tenney Johnson, even the signature looks labored. In fact, minus the signature, if you asked us to identify the artist we honestly wouldn't have a clue. I hope it wasn't represented to Dee as an FTJ—and I really hope he didn't pay a lot for it. Let us know if we can help."

Statement #3: "Since I have not seen this painting firsthand, I would like to modify my recent comments to Tami somewhat. Our position is that this painting would not be acceptable for the Coeur d'Alene Art Auction. Let's leave it at that."

(ECF No. 38 at 3-5 (alterations in original).) In Plaintiffs' view, these statements are defamatory in two ways. First, the statements amount to a factual assertion that *The Sun and the Rain* is a fake, implying that Plaintiffs misrepresented the painting's authenticity. (ECF No. 55 at 3, 16.) Second, Mr. Stremmel's statement that he hoped *The Sun and the Rain* was not represented to Mr. Hubbard as a Frank Tenney Johnson painting and that Mr. Hubbard "didn't pay a lot" for it "cast aspersions on the seller." (*Id.* at 16.)

Defendants argue, *inter alia*, that none of these statements are actionable because Plaintiffs were not the subjects of the statements. (ECF No. 52 at 8.) Plaintiffs argue that it is irrelevant whether Gerald Peters and his gallery were the express subjects of the

statements because the recipients of the communications—Mr. Hubbard and his two associates—understood Mr. Stremmel's statements as referring to Plaintiffs. (ECF No. 55 at 16-18.)

The Court thus considers whether Mr. Stremmel's statements were made concerning Plaintiffs. First, Plaintiffs are correct that it is immaterial whether the communication expressly identifies Plaintiffs. *See* Restatement (Second) of Torts § 564 cmt. b ("It is not necessary that the plaintiff be designated by name [if] there is such a description of or reference to him that those who hear or read reasonably understand the plaintiff to be the person intended."). It is enough that Mr. Hubbard or his associates understood Mr. Stremmel to have intended to refer to Plaintiffs, *id.* cmt. a, as long as such an understanding actually took place and was "reasonable in the light of all the circumstances." *Id.* cmt. b; *see also SDV/ACCI, Inc. v. AT & T Corp.*, 522 F.3d 955, 960 (9th Cir. 2008) ("[A] defamatory statement that is ambiguous as to its target not only must be capable of being understood to refer to the plaintiff, but also must be shown actually to have been so understood by a third party.").

Even viewing the facts in the light most favorable to Plaintiffs, it would not have been reasonable for Mr. Hubbard or his associates to understand Mr. Stremmel as intending to refer to Plaintiffs in any of these statements. When Mr. Stremmel made the first two statements, he had no knowledge that Plaintiffs were connected to the painting.[7] Moreover, Mr. Hubbard and his associates knew that Mr. Stremmel lacked any knowledge of Plaintiffs' involvement because Mr. Hubbard and his associates had kept that information from Mr. Stremmel. It would have been unreasonable as a matter of law for

---

[7]Mr. Hubbard and his associates all testified in their depositions that they had not told Mr. Stremmel that Plaintiffs were involved with *The Sun and the Rain*. (ECF No. 52-5 at 27, 52 (Mr. Hubbard's deposition testimony that he and his associates had not disclosed to Mr. Stremmel that the painting involved Mr. Peters and that Mr. Stremmel did not know who sold the painting to Mr. Hubbard); ECF No. 52-6 at 51-52 (Mr. Burger's deposition testimony that Mr. Stremmel "wasn't clear whether [the painting] was one Mr. Hubbard was thinking of buying or thinking of selling. And we didn't—I don't believe we had ever told him either way."); ECF No. 52-12 at 28 (Ms. Groat's deposition testimony that she had not disclosed to Mr. Stremmel that the painting was acquired from Plaintiffs).)

Mr. Hubbard or his associates to infer that Mr. Stremmel intended to disparage Plaintiffs when Mr. Hubbard and his associates controlled all the information regarding Plaintiffs' involvement with the painting and had not disclosed any of it to Mr. Stremmel. While Mr. Stremmel was aware of Plaintiffs' involvement when he made the third statement, that statement is not reasonably understood to refer to Plaintiffs either on its face or in the light of all the circumstances. The statement does not contain any obviously defamatory statement; and, given that Mr. Stremmel was completely ignorant of Plaintiffs' involvement and scaled back his statements once he learned of it, any understanding of Mr. Stremmel's third statement as intended to refer to Plaintiffs would be unreasonable as a matter of law, even viewing the facts in the light most favorable to Plaintiffs.

Plaintiffs have focused particularly on the following portion of Mr. Stremmel's second statement: "I hope it wasn't represented to Dee as an FTJ—and I really hope he didn't pay a lot for it." (*See* ECF No. 55 at 16, 21-22.) As discussed *supra*, this statement cannot be reasonably understood to refer to Plaintiffs under the circumstances. Morever, even if this statement were reasonably understood as intended to refer to Plaintiffs, it does not imply an assertion of objective fact. *See Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995) ("[W]e examine the work as a whole, the specific context in which the statements were made, and the statements themselves to determine whether a reasonable factfinder could conclude that the statements imply a false assertion of objective fact and therefore fall outside of the protection of the First Amendment.") Even construing the statement in the light most favorable to Plaintiffs, Mr. Stremmel's statement—when evaluated in context—constitutes a social nicety and an expression of hope regarding the circumstances that led to Mr. Hubbard's inquiry to Mr. Stremmel. Particularly given Mr. Stremmel's understandable ignorance about the circumstances surrounding the painting—he had not been told that the Gerald Peters Gallery had sold *The Sun and the Rain* to Mr. Hubbard or was connected to the painting in any manner— no reasonable jury could conclude that Mr. Stremmel's statement implied any objective fact, particularly about Plaintiffs.

Plaintiffs' citation to non-binding precedent, *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186 (3d Cir. 1998), is unpersuasive because the facts are readily distinguishable. In *Taj Mahal*, an airline provided letters to some clients of a travel agency—Taj Mahal Travel—stating "that 'the ticket presented has been reported as stolen,' 'it is unfortunate that you have purchased one of these tickets,' and 'Delta has not yet received the money you paid.'" *Id.* at 189. Taj Mahal Travel sued Delta for defamation. *Id.* at 188. The court found that a reasonable reader could conclude that the letter was intended to refer to Taj Mahal Travel because the reader's only contact with a travel agency to purchase the ticket would have been with Taj Mahal Travel. *Id.* at 190. However, the airline in *Taj Mahal* knew the identity of the travel agency that had stolen its tickets. Here, Mr. Stremmel did not know that Plaintiffs were involved with *The Sun and the Rain*, at least when he made the first two statements. This factual difference is critical because, under the circumstances, it would have been unreasonable for Mr. Hubbard or his associates to understand Mr. Stremmel to have intended to refer to Plaintiffs, as explained *supra*. Even viewing the facts in the light most favorable to Plaintiffs, it would not have been reasonable for Mr. Hubbard and his associates to understand Mr. Stremmel as intending to refer to Gerald Peters or his gallery when Mr. Hubbard and his associates had kept Mr. Stremmel entirely in the dark about the circumstances surrounding the painting.

Accordingly, the Court will grant summary judgment in favor of Defendants on Plaintiffs' claim for defamation because Mr. Stremmel's statements could not reasonably have been understood as intended to refer to Plaintiffs. Moreover, Mr. Stremmel's expression of hope regarding the circumstances of the painting and Mr. Hubbard's inquiry does not imply an assertion of objective fact under the circumstances and is not actionable for that reason.

**B.    Business Disparagement (Count Two)**

The business disparagement claim shares some common elements with the defamation claim. "To succeed in a claim for business disparagement, the plaintiff must prove: (1) a false and disparaging statement, (2) the unprivileged publication by the

defendant, (3) malice, and (4) special damages." *Clark Cty. Sch. Dist.*, 213 P.3d at 504 (citation omitted). The parties rest upon the arguments they made with regard to the claim of defamation. (*See* ECF No. 52 at 14-15; ECF No. 55 at 25.) Defendants are similarly entitled to summary judgment on Plaintiffs' claim for business disparagement because Mr. Stremmel's statements could not reasonably have been understood as intended to refer to Plaintiffs.

### C.  Deceptive Trade Practices (Count Three)

Plaintiffs claim that Defendants disparaged Plaintiffs' goods (specifically, *The Sun and the Rain*) and Plaintiffs' business by representing that *The Sun and the Rain* was a fake, thereby violating the Nevada Deceptive Trade Practices Act ("DTPA"), NRS § 598.0915(8). (ECF No. 38 at 10.) The parties rest upon the arguments they made with regard to the claim of defamation. (*See* ECF No. 52 at 15; ECF No. 55 at 25-26.)

"To state a claim under Nevada's [DTPA], a plaintiff must allege (1) a deceptive trade practice or other unlawful or prohibited conduct as defined by statute and (2) damages resulting from the alleged deceptive trade practice. Under NRS § 598.0915(8), a person or entity engages in a 'deceptive trade practice' if, in the course of his or her occupation, he or she disparages the goods, services or business of another person by making false or misleading representations of fact." *Rimini St., Inc. v. Oracle Int'l Corp.*, No. 2:14-CV-1699-LRH-CWH, 2017 WL 5158658, at *9 (D. Nev. Nov. 7, 2017) (citing *Picus v. Wal–Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009)).

The violation of NRS § 598.0915(8) is premised on Defendants having committed defamation or business disparagement. Because the Court will grant summary judgment in favor of Defendants on those tort claims, this alleged violation is unsupported. *See Allstate Ins. Co. v. Shah*, No. 2:15-CV-01786-APG-CWH, 2017 WL 1228406, at *7 (D. Nev. Mar. 31, 2017). Moreover, under the circumstances here, where Mr. Hubbard and his associates solicited Mr. Stremmel's opinion about the painting and kept him in the dark about Plaintiffs' involvement, a finding that Mr. Stremmel engaged in deceptive trade practices would border on absurdity.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 52) is granted.

It is further ordered that Defendants' motion to dismiss (ECF No. 42) is denied as moot.

The Clerk of the Court is instructed to enter judgment accordingly and close this case.

DATED THIS 9th day of August 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE